HARRY DODDS, Respondent, *v.* MARY ELIZABETH McCOLGAN, as Executrix, etc., of ELIZABETH McCOLGAN, Deceased, Appellant.*

First Department, May 2, 1930.

*Affg. 134 Misc. Rep. 518.

*Harry F. Byrne* of counsel [*Durand, Bowen & Byrne,* attorneys], for the appellant.

*Alvin C. Cass* of counsel [*Edward D. Dowling* and *Jacques W. Bacal* with him on the brief; *Dowling & Cass,* attorneys], for the respondent.

SHERMAN, J. Plaintiff, a plumber, rendered services and furnished material in repairs upon realty owned by Elizabeth McColgan, defendant's testatrix. Such work was in large part performed almost fifteen years ago; yet, despite plaintiff's prompt and energetic efforts to recover by suit the payment undoubtedly due to him, he has been prevented from obtaining full recompense until the entry of the judgment appealed from. The record before us reveals a remarkable, and rarely equaled, history of litigation in various courts, unavailingly pursued and strenuously opposed, whereby decedent for so many years escaped judgment and ultimately arrived in a position to assert successfully the Statute of Limitations.

It is unnecessary to recount in detail the many proceedings had in several courts. The court below has made findings well supported by evidence to the effect that Elizabeth McColgan, defendant's testatrix, accomplished this result by a series of fraudulent misrepresentations, which were reiterated by false pleadings and affidavits submitted by her to the courts in order to effectuate her well-defined purpose of escaping, at all hazards, payment of her just debt to plaintiff. This suit has been brought in equity to render that attempt ineffective by depriving defendant of the benefit of the Statute of Limitations, under the circumstances here disclosed.

At the outset Mrs. McColgan led plaintiff to believe that the

estate of her deceased husband, John McColgan, was the owner of the premises upon which the tenement house department had ordered work to be done; that she was the executrix of that estate and consequently liable, if at all, only in her representative capacity. Plaintiff was ignorant of the fact that the estate was then non-existent, that her husband had died in 1886 and that though she had qualified as such executrix in that year, the entire estate had been distributed in October, 1887, and she had then been discharged as such executrix. He did not know that Elizabeth McColgan had owned the property for many years and that the estate had never had title to the premises. He believed on the contrary that it was the owner, for he had become a tenant under a lease which as landlord she had executed, purporting to be such executrix. After the work was performed, she caused to be delivered to him in payment a note which, signed by her son, purported to be the obligation of that estate. Default in its payment occurred and suit was brought by plaintiff against her in her representative capacity. In her answers she defended as such executrix and in effect continued to assert that the suit was properly brought against her as executrix but pleaded that plaintiff should be defeated upon other grounds, among which was a plea of payment. Her conduct misled plaintiff into settling that action by an agreement which provided among other things that the estate should give to plaintiff in place of the note in suit numerous new notes for small amounts but of like tenor with deferred maturities — all made by her son acting as the agent of that estate. Some of these notes were paid from time to time and during that period plaintiff rendered further services receiving therefor additional like notes, executed by her son as agent for the estate.

After the death of her son in January, 1917, Mrs. McColgan declined to pay any of the notes, whereupon judgment was taken against her as executrix pursuant to the settlement agreement. In behalf of that estate and as its executrix, Mrs. McColgan then moved to vacate that judgment under the claim that she had not been served with process in the original action and had not appeared therein, that the answer and amended answer interposed had not been verified by her, as they appeared to be, and that the attorney who had appeared in behalf of herself as executrix and had negotiated the settlement had no authority to do so. A long and bitterly contested reference was then held. The referee's report, confirmed below and affirmed upon appeal to this court (197 App. Div. 944), demonstrated the falsity of her contentions. Thus finally the judgment against her as executrix was upheld. Considerable time had necessarily elapsed before this result was achieved. Plain-

tiff then applied to the Surrogate's Court seeking leave to issue execution against the estate. Thereupon for the first time, decedent by affidavit revealed that the estate had been distributed about thirty-three years theretofore; that it had no assets and in any event was not liable to plaintiff. Plaintiff's application was accordingly denied by the surrogate. The sheriff declined to execute the judgment against Mrs. McColgan individually.

The judgment obtained after so much work and expense was worthless, unless it could be amended to run against Mrs. McColgan individually. This the plaintiff sought to accomplish by a series of motions in the Supreme Court, only to meet defeat through affidavits filed by her falsely contending among other things that her son was not her individual agent and that he had always been without authority to bind her. Plaintiff had lost through the lapse of time the opportunity to file a mechanic's lien; he had by reason of her fraud and misrepresentations pursued the wrong defendant and the only recourse left to him was to sue her individually to recover for the work done or, if possible, to show that she was in fact individually liable upon the notes which were not signed by her and did not purport to bind her individually. Such actions were brought in March, 1923, in the Municipal Court. Several defenses were pleaded, among them the Statute of Limitations as to the notes which had fallen due six years or more theretofore. At trial plaintiff succeeded in establishing the agency of the deceased son and recovered judgment but only upon such notes as were not barred by limitation. To the extent that she was freed from liability upon those notes her course of conduct had culminated in success. Upon appeal taken by her, that judgment met reversal at the Appellate Term upon the ground that the son's agency was not shown (125 Misc. 405); but the judgment was later reinstated upon plaintiff's appeal to this court, which took occasion to observe (*Dodds* v. *McColgan*, 222 App. Div. 126) that a just debt had been at least partially paid and that (p. 131) " not wholly has the endeavor been successful to satisfy the debt for this work and materials by legal technicalities rather than cash." Thereupon plaintiff began this suit in equity to recover upon the barred notes (suit upon which had been withdrawn in the Municipal Court when defendant had pressed the defense of the Statute of Limitations), and the judgment appealed from grants recovery upon these notes against her estate, Elizabeth McColgan having died in 1924.

The gravamen of the complaint is that decedent's fraud and misrepresentations commenced by the giving of the worthless estate notes to plaintiff, inducing him thereby and by subsequent and renewed misrepresentations to embark in fruitless litigation against

a non-existent estate and to refrain from suing her until the statute had run. Equity in a proper case will thwart such a fraud; it may accomplish the result by enjoining a party from interposing the statute as a defense and decreeing recovery upon the debt. Here, the relief sought is merely a judgment for the moneys due; the judgment reads as though it were rendered in a common-law action. Of course, plaintiff might have again sued on the notes and when met with the defense of the statute have instituted a suit for an injunction and as an incident of equitable jurisdiction had judgment in the amount of the debt. That this circuitous method was not followed is no valid objection; it was not necessary to sue again at law, because the defendant had already relied with success upon that plea and plaintiff was remediless at law. In our view, equity had jurisdiction to relieve against the fraudulent and unjust result and to enter the rightful judgment upon the debt which but for decedent's devious conduct would long ago have been procured.

The denial to defendant of the benefit of the Statute of Limitations is within the power of a court of equity. As stated by this court in *Clarke* v. *Gilmore* (149 App. Div. 445, 450): "Where one has obtained an advantage by fraud, equity will not permit him to hold it by resorting to the Statute of Limitations." The conclusion there reached is in accordance with the judgment for plaintiff in *Lightfoot* v. *Davis* (198 N. Y. 261), where though an action of conversion was barred by the Statute of Limitations, the court allowed recovery in equity for bonds stolen many years before by defendant's testator, who had fraudulently concealed his possession of them, until the statute had run. Like relief has been granted in cases nearly parallel where equity has prevented the statute from becoming an instrument in aid of fraud. (*Clark* v. *Augustine*, 62 N. J. Eq. 689; *Howard* v. *West Jersey & S. S. R. Co.*, 141 Atl. 755; *Bailey* v. *Glover*, 88 U. S. 342.)

Defendant also insists that this suit, which was started on March 15, 1928, is barred because it was not commenced within six years from June 14, 1921, when defendant's testatrix disclosed in the Surrogate's Court that the estate of her deceased husband was non-existent. Even if the Civil Practice Act, section 48, subdivision 5, applied here, the six-year period was extended by Mrs. McColgan's death on July 19, 1924. (Civ. Prac. Act, § 21.) The applicable limitation is ten years. (Civ. Prac. Act, § 53; *Clarke* v. *Gilmore*, *supra*.)

The judgment appealed from should be affirmed, with costs.

MARTIN, MERRELL and O'MALLEY, JJ., concur.

Judgment affirmed, with costs.